Coos
No. 2006-761

### NEW HAMPSHIRE DEPARTMENT OF ENVIRONMENTAL SERVICES

v.

### JOSEPH MARINO & a.

Argued: May 23, 2007
Opinion Issued: July 18, 2007

*Kelly A. Ayotte*, attorney general (*K. Allen Brooks*, assistant attorney general, on the brief and orally), for the State.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Scott H. Harris* and *Rachel A. Hampe* on the brief, and *Mr. Harris* orally), for the respondents.

DALIANIS, J. The respondents, Joseph and Rose Marino, appeal the Superior Court's (*Vaughan*, J.) order granting partial summary judgment to the petitioner, the New Hampshire Department of Environmental Services (DES), and denying their cross-motion for partial summary judgment on DES' claim that they violated the State Water Pollution and Waste Disposal Act (Water Pollution Act), *see* RSA ch. 485-A (2001 & Supp. 2006), and the State Comprehensive Shoreland Protection Act (Shoreland Protection Act), *see* RSA ch. 483-B (2001 & Supp. 2006). The respondents also appeal the trial court's determination, following a bench trial, that they violated the State Fill and Dredge in Wetlands Act (Wetlands Act), *see* RSA ch. 482-A (2001 & Supp. 2006). Additionally, they appeal the civil penalties and injunctive relief the trial court imposed for their statutory violations. We affirm.

The record supports the following: Since 1991, the respondents have owned an approximately .13 acre lot with 150 feet of frontage on Back Lake in Pittsburg. In October 2004, they began to construct a single-family home there. Shortly thereafter, they received phone calls from DES informing them that their construction possibly violated the Shoreland Protection Act because the act prohibited any construction within fifty feet of the shoreline without DES approval. *See* RSA 483-B:9, II(b) (Supp. 2006). They were also advised that there was no septic system approval on file with the State and that until the above issues were resolved, they should cease construction. *See* RSA 483-B:6, I(c) (2001). At the end of

October, DES sent a letter to the respondents reiterating these points, advising them to cease construction "immediately, until further notice" and requesting that they "submit all relevant information . . . regarding the project, including . . . your building plans, a site plan showing setbacks from the Back Lake reference line, and temporary erosion control measures." In their letter in response, the respondents contended that the Shoreland Protection Act did not apply to their lot because it was a nonconforming lot of record, *see* RSA 483-B:10 (2001), and they directed DES not to contact any of their contractors.

On November 2, 2004, the parties met to discuss these issues. Among other things, DES advised the respondents not to install the 1000-gallon plastic holding tank, which they had purchased, but instead to hire a septic designer to design a septic system. The respondents were also advised to apply for a waiver to the setback requirements.

DES sent the respondents a letter on November 8, 2004, confirming that before a water supply could be connected to the structure, a state-approved septic design had to be obtained, and that because the lot did not meet setback requirements, the respondents had to seek a waiver from DES. Despite these communications with DES, the respondents did not seek any State permits to construct their home.

In January 2005, DES filed a petition for permanent injunction and civil penalties against the respondents for violating the Shoreland Protection, Water Pollution and Wetlands Acts. Immediately after being served with it, the respondents asked their builder to rush the project to completion.

The home was completed in April 2005. It is located between fifteen and twenty feet from the edge of Back Lake. Although the structure contains various plumbing fixtures, including a pressure tank with pipe connections, three sink fixtures, two toilet fixtures, a shower stall, a washing machine and a dishwasher, none of these fixtures are yet connected to an active water source. But for the lack of water to the home, it would be a fully functioning single-family home.

In May 2005, the court granted the State's petition for a preliminary injunction. Before the preliminary injunction was granted, however, the respondents had installed an artesian well and overflow drain on the property and placed a holding tank on the lot to collect and contain sewage and wastewater produced from their use of the home.

In September 2005, DES moved for partial summary judgment, arguing that the respondents violated: (1) the Water Pollution Act by constructing a building from which wastes will discharge before obtaining a permit from DES, *see* RSA 485-A:32, I (2001); (2) the Wetlands Act by installing an overflow drain without obtaining a dredge and fill permit from DES, *see* RSA 482-A:3, I (2001) (amended 2006); and (3) the Shoreland Protection

Act by constructing a primary structure within fifty feet of Back Lake without DES authorization, *see* RSA 483-B:9, II(b), :10, I. The respondents objected and cross-moved for partial summary judgment. The trial court granted partial summary judgment to DES on its Water Pollution and Shoreland Protection Act claims, but denied its motion on its Wetlands Act claim. The court denied the respondents' cross-motion for partial summary judgment in its entirety.

Following a bench trial and a view of the property, the trial court ruled that the respondents violated the Wetlands Act by installing an overflow drain and landscaping the property without obtaining a dredge and fill permit from DES. *See* RSA 482-A:3, I; RSA 482-A:12 (2001). For these violations, the court imposed a civil penalty of $10,000 and ordered the respondents to apply for "after-the-fact authorization from ... DES for any alterations made to the banks of Back Lake." *See* RSA 482-A:14, III (2001). For the Shoreland Protection Act violations, the court imposed a civil penalty of $50,000, which represented $1,000 per day for each day of violation. *See* RSA 483-B:18 (Supp. 2006). The court also ordered the respondents to obtain DES approval for a septic system that complied with the pertinent law and to submit to a review by DES as to the proper size of the structure to be located on the property. For the Water Pollution Act violations, the court fined the respondents $5,000. *See* RSA 485-A:43 (2001).

I

The respondents first argue that the trial court erred when it granted DES' motion for partial summary judgment on DES' Shoreland Protection Act claim and ruled that the respondents violated the act by building their home within fifty feet of Back Lake without authorization. They contend that because they did not violate the act, the trial court erred when it imposed a civil penalty of $50,000 upon them.

The respondents assert that the trial court's ruling that they violated the Shoreland Protection Act is erroneous because RSA 483-B:10, I, permitted them to build their home within fifty feet of Back Lake without DES approval. They further contend that as there is no express requirement in RSA 483-B:10 that they obtain DES approval, they cannot have violated the act by failing to obtain this approval. Finally, they argue that RSA 483-B:10, I, is unconstitutional because it constitutes an unconstitutional delegation of legislative power to the executive branch or because it is impermissibly vague.

We will affirm a trial court's grant of summary judgment if, considering the evidence and all inferences properly drawn therefrom in the light most favorable to the non-movant, our review of that evidence discloses no

genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Stewart v. Bader*, 154 N.H. 75, 87 (2006). We review the trial court's application of the law to the facts *de novo. Id.*

We begin by analyzing whether RSA 483-B:10, I, allowed the respondents to build their home within fifty feet of Back Lake without DES authorization. The interpretation of a statute is a question of law, which we review *de novo. Carlisle v. Frisbie Mem. Hosp.*, 152 N.H. 762, 773 (2005). This court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *DaimlerChrysler Corp. v. Victoria*, 153 N.H. 664, 666 (2006). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Id.* When the language of a statute is clear on its face, its meaning is not subject to modification. *Dalton Hydro v. Town of Dalton*, 153 N.H. 75, 78 (2005). We will neither consider what the legislature might have said nor add words that it did not see fit to include. *Id.* Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. *DaimlerChrysler Corp.*, 153 N.H. at 666. Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. *Carlisle*, 152 N.H. at 773.

The Shoreland Protection Act, of which RSA 483-B:10, I, is a part, is, as its title suggests, aimed at protecting the state's shoreland as well as its public waters and preventing "uncoordinated, unplanned and piecemeal development along the state's shorelines." RSA 483-B:1 (2001). RSA 483-B:6 (Supp. 2006) expressly requires "any person intending to" engage in certain activities to obtain the necessary permits pursuant to other statutory schemes *and* to "demonstrate to the satisfaction of [DES] that the proposal meets or exceeds the development standards of [RSA chapter 483-B]." RSA 483-B:6, II authorizes DES to "grant, deny, or attach reasonable conditions" to the permits listed in RSA 483-B:6, I, "to protect the public waters or the public health, safety or welfare." "Such conditions shall be related to the purposes of [RSA chapter 483-B]." RSA 483-B:6, II. In this way, the Shoreland Protection Act "functions statewide as an additional layer of regulation[,] which overlays existing state and municipal permitting schemes, such as building permits, wetlands permits, and septic system approvals." *Opinion of the Attorney General*, No. 04-0002 (Sept. 2, 2004).

RSA 483-B:9 (Supp. 2006) sets forth the minimum development standards. Among other things, RSA 483-B:9: (1) requires that primary structures be set back behind the primary building line, which is fifty feet from the reference line (*e.g.*, the high water level or highest observable

tide line); (2) prohibits certain activities and substances within the shoreland; and (3) establishes specific requirements for septic systems and prevention of erosion. *See* RSA 483-B:4, XVII (2001). RSA 483-B:2 (2001) explains that the minimum development standards of RSA chapter 483-B are intended to serve numerous public policies related to preserving shoreland and public waters, in addition to wildlife habitats, and to controlling development along the shoreland.

RSA 483-B:10 pertains to nonconforming lots of record. RSA 483-B:10, I, provides:

> Except when otherwise prohibited by law, present and successive owners of an individual undeveloped lot may construct a single family residential dwelling on it, notwithstanding the provisions of this chapter. Conditions may be imposed which, in the opinion of the commissioner, more nearly meet the intent of this chapter, while still accommodating the applicant's rights.

■ We disagree with the respondents that this provision allowed them to build their home within fifty feet of the edge of Back Lake absent DES authorization. The plain meaning of the provision allows DES to impose conditions on any construction of a single-family home on a nonconforming undeveloped lot of record. The right to build a single-family home on a nonconforming undeveloped lot of record, therefore, is not absolute, but is contingent upon conditions that DES may impose upon the construction. The use of the word "applicant" is further evidence that the legislature intended RSA 483-B:10, I, to require DES approval before a single-family home was constructed on a nonconforming undeveloped lot of record.

■ RSA 483-B:10, I, grants authority to DES, not the individual home owner, to determine how to "more nearly meet the intent of this chapter, while still accommodating the applicant's rights." Based upon our interpretation of RSA 483-B:10, I, we conclude that the trial court did not err when it ruled that the respondents violated this provision by building their home within fifty feet of Back Lake without obtaining DES approval. We do not address the respondents' arguments regarding conditions that DES has since imposed or threatened to impose upon them pursuant to the authority granted it under RSA 483-B:10, I, as these issues are not properly part of this appeal.

We next address the respondents' assertion that RSA 483-B:10, I, is unconstitutional. The constitutionality of a statute is a question of law, which we review *de novo*. *Gonya v. Comm'r, N.H. Ins. Dep't*, 153 N.H. 521, 524 (2006). "In reviewing a statute, we presume it to be constitutional and we will not declare it invalid except upon inescapable grounds." *Id.*

Because the respondents argue only under the State Constitution, we base our decision upon it alone, citing federal cases for guidance only. *Id.*

 The respondents first contend that RSA 483-B:10, I, violates Part I, Article 37 of the State Constitution because it impermissibly delegates unlimited legislative authority to DES. "Under the separation of powers article of the New Hampshire Constitution, the General Court may not create and delegate duties to an administrative agency if its commands are in such broad terms as to leave the agency with unguided and unrestricted discretion in the assigned field of its activity." *Smith Insurance, Inc. v. Grievance Committee*, 120 N.H. 856, 861 (1980) (quotation and ellipses omitted). Thus, we have ruled unconstitutional statutes that are "devoid of either a declared policy or a prescribed standard laid down by the legislature." *Id.* "To avoid the charge of unlawfully delegated legislative power, [a] statute must lay down basic standards and a reasonably definite policy for the administration of the law." *Union School District v. Comm'r of Labor*, 103 N.H. 512, 516 (1961) (quotation omitted). We hold that RSA 483-B:10, I, lays down such basic standards and a reasonably definite policy and thus does not constitute an impermissible delegation of legislative authority in violation of Part I, Article 37 of the State Constitution.

RSA 483-B:10, I, permits the commissioner of DES to impose conditions that "more nearly meet the intent of this chapter, while still accommodating the applicant's rights." The conditions imposed by the commissioner, therefore, must be consistent with the policies underlying RSA chapter 483-B. *See* RSA 483-B:1.

The legislature has set forth, in detail, in RSA 483-B:1 and RSA 483-B:2, the policies underlying RSA chapter 483-B. These policies are sufficiently definite to pass constitutional muster. As described by the legislature in RSA 483-B:1, these policies include: (1) protecting the state's shoreland and maintaining the "integrity of public waters"; (2) protecting public waters and controlling their use and that of adjacent shoreland "for the greatest public benefit"; and (3) preventing "uncoordinated, unplanned and piecemeal development along the state's shorelines, which could result in significant negative impacts on the public waters of New Hampshire." As described in RSA 483-B:2, they also include: (1) maintaining "safe and healthful conditions"; (2) providing for the "wise utilization of water and related land resources"; (3) preventing and controlling water pollution; (4) protecting wildlife habitats, archaeological and historical resources, commercial fishing and maritime industries, freshwater and coastal wetlands, and public use of waters; (5) controlling "building sites, placement of structures, and land uses"; (6) conserving "shoreland cover

and points of access to inland and coastal waters" and "natural beauty and open spaces"; (7) preserving "the state's lakes, rivers, estuaries and coastal waters in their natural state"; (8) promoting "wildlife habitat, scenic beauty, and scientific study"; (9) anticipating and responding to "the impacts of development in shoreland areas"; and (10) providing for "economic development in proximity to waters."

The conditions imposed by the commissioner also must comport, as much as possible, with the minimum development standards set forth in RSA 483-B:9, as the legislature intended these standards to serve the policies set forth in RSA 483-B:2. *See* RSA 483-B:2. These standards require, among other things, that primary structures be set back behind the primary building line, which is fifty feet from the reference line. *See* RSA 483-B:9, II(b). Pursuant to the minimum development standards, how far back a new leaching system must be set back from the shore depends upon certain soil conditions. RSA 483-B:9, V(b). The minimum development standards also include requirements pertaining to erosion and siltation as well as minimum lot size and shoreland frontage. *See* RSA 483-B:9, V(c), (d).

Because RSA 483-B:10, I, impliedly incorporates the basic standards set forth in RSA 483-B:9 and the reasonably definite policies set forth in RSA 483-B:1 and RSA 483-B:2, it does not constitute an unlawful delegation of legislative power to DES.

The respondents' final argument regarding RSA 483-B:10, I, is that it violates their state constitutional right to due process because it is impermissibly vague. *See* N.H. CONST. pt. I, art. 12. Vagueness may invalidate a statute either because it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or because it "authorizes or even encourages arbitrary and discriminatory enforcement." *State v. Porelle*, 149 N.H. 420, 423 (2003). "A party challenging a statute as void for vagueness bears a heavy burden of proof in view of the strong presumption favoring a statute's constitutionality." *State v. MacElman*, 154 N.H. 304, 307 (2006). The specificity required by due process "need not be contained in the statute itself, but rather, the statute in question may be read in the context of related statutes, prior decisions, or generally accepted usage." *In re Justin D.*, 144 N.H. 450, 453-54 (1999).

The respondents assert that the statute was unconstitutionally vague as applied to them. In an as-applied challenge, we examine whether the statute provided the respondents with a reasonable opportunity to know that their particular conduct was prohibited. *See MacElman*, 154 N.H. at 309. As previously discussed, the plain language of RSA 483-B:9, which

prohibits building a home within fifty feet of the reference line of Back Lake, and the plain language of RSA 483-B:10, I, which permits DES to impose conditions upon a lot owner's construction of a single-family home on a nonconforming undeveloped lot, put the respondents on notice that they could not build a single-family home within fifty feet of the edge of Back Lake without first obtaining DES approval to do so. Accordingly, we conclude that RSA 483-B:10, I, is not unconstitutionally vague as applied to the respondents.

 The respondents also appear to argue that the statute was impermissibly vague on its face. We will assume, without deciding, that the respondents may challenge the statute facially. *See MacElman*, 154 N.H. at 307. *But cf. Chapman v. United States*, 500 U.S. 453, 467 (1991) (because "First Amendment freedoms are not infringed by the [criminal statute at issue], . . . the vagueness claim must be evaluated as the statute is applied"). The respondents' facial challenge fails for the same reasons as their as-applied challenge and their contention that the statute impermissibly delegates unlimited legislative authority to DES.

## II

The respondents next argue that the trial court erred when it found that they violated the Wetlands Act. The Wetlands Act provides, in pertinent part: "No person shall excavate, remove, fill, dredge or construct any structures in or on any bank, flat, marsh, or swamp in and adjacent to any waters of the state without a permit from [DES]." RSA 482-A:3, I. The trial court found that the respondents violated this act by failing to obtain a permit before placing fill on the banks of Back Lake and installing an overflow drain from their well there. *See id.* The trial court based its findings in part upon a view it took of the subject property.

We will not disturb the findings of the trial court unless they lack evidentiary support or are erroneous as a matter of law. *Thompson v. C&C Research & Dev.*, 153 N.H. 446, 449 (2006). We review legal conclusions, as well as the application of law to fact, independently for plain error. *Id.* Our inquiry is to determine whether the evidence presented to the trial court reasonably supports its findings, and then whether the court's decision is consonant with applicable law. *Id.* "[T]he findings of the trial court are within its sound discretion, particularly when a view has been taken." *Husnander v. Town of Barnstead*, 139 N.H. 476, 479 (1995).

The respondents contend that the trial court's finding that they placed fill on the banks of Back Lake was erroneous because no "direct evidence" supported it. As there is circumstantial evidence to support this finding, in addition to the trial court's view of the property, we uphold it. *See id.* It

was within the trial court's discretion to resolve conflicts in the testimony, measure the credibility of witnesses, and determine the weight to be given evidence. *See Cook v. Sullivan*, 149 N.H. 774, 780 (2003).

■ The respondents concede that they had an overflow drain for their artesian well installed into the bank of Back Lake, which required digging a trench that was approximately two feet wide and four feet deep. At trial, they also did not dispute that they refilled the trench for the overflow drain after it was dug. They contend, however, that none of this work constituted "excavat[ing], remov[ing], fill[ing], [or] dredg[ing]" as those terms are used in the Wetlands Act. RSA 482-A:3, I. We hold, as a matter of law, that digging a trench and refilling it after it is dug constitutes "excavat[ing], remov[ing], fill[ing]," or "dredg[ing]" as those terms are used in the Wetlands Act. *Id.*

■ The respondents also assert that because they did not know that they needed an overflow drain when the well was first dug, they could not have anticipated a need for a permit and should not have been found to have violated the act by failing to obtain one. Whether the respondents knew before or after the well was dug that they needed an overflow drain is immaterial. Once they knew that one was needed, the Wetlands Act prohibited them from "excavat[ing], remov[ing], fill[ing]," or "dredg[ing]" without first obtaining a permit from DES. RSA 482-A:3, I.

■ The respondents next argue that the trial court erred when it imposed a civil penalty of $10,000 upon them under the Wetlands Act absent any evidence that their conduct negatively affected the wetlands. RSA 482-A:14, III provides, in pertinent part, that the court may "levy upon any person who violates this chapter . . . a civil penalty in an amount not to exceed $10,000 per violation. Each day of a continuing violation shall constitute a separate violation." Nothing in RSA 482-A:3, I, or RSA 482-A:14, III requires the trial court to find that a person's failure to obtain a permit before "excavat[ing], remov[ing], fill[ing]," or "dredg[ing]" damaged the wetlands. Accordingly, we hold that the trial court's imposition of a civil penalty of $10,000 upon the respondents was not unlawful.

We decline to address the respondents' assertion that this civil penalty contravened the Eighth Amendment to the Federal Constitution and Part I, Article 18 of the State Constitution as they have failed to demonstrate that they argued this assertion to the trial court and, thus, preserved it for our review. "This court has consistently held that we will not consider issues raised on appeal that were not presented in the lower court." *Lamontagne Builders v. Brooks*, 154 N.H. 252, 258 (2006) (quotation

omitted). *But see* SUP. CT. R. 16-A (plain error rule). "We require issues to be raised at the earliest possible time, because trial forums should have a full opportunity to come to sound conclusions and to correct errors in the first instance." *Tiberghein v. B.R. Jones Roofing Co.*, 151 N.H. 391, 393 (2004) (quotation omitted). As the appealing parties, the respondents bear the burden of demonstrating that they raised their issues before the trial forum. *Id.* We also decline to consider these claims under the plain error rule as the respondents do not invoke this rule and we see no plain error. *See* SUP. CT. R. 16-A.

### III

Finally, the respondents contend that the trial court erred when it fined them $5,000 under the Water Pollution Act for their failure to obtain prior approval to construct a building from which waste would discharge. *See* RSA 485-A:32, I, :43. RSA 485-A:43, I, provides:

> Any person who shall violate any of the provisions of this subdivision or who shall knowingly fail, neglect or refuse to obey any order of [DES] ..., or who shall knowingly make any misstatement of material fact for which said person is personally responsible in connection with an application for an approval pursuant to this subdivision shall be guilty of a misdemeanor if a natural person.

RSA 485-A:43, III permits the trial court to levy a fine of not more than $5,000 "for such violation, failure, neglect, refusal or any misstatement for which said person is personally responsible."

The respondents contend that no fine should have been levied because they never disobeyed a DES order or made any misstatement of material fact in connection with an application under the act. The trial court, however, fined them because they violated RSA 485-A:32, I, by failing to obtain prior approval to construct a building from which waste would discharge. *See* RSA 485-A:32, I, :43. The trial court, therefore, did not err by imposing a $5,000 fine upon them for violating the Water Pollution Act.

*Affirmed.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.