Belknap
No. 2008-290

EDWARD CORREIA

v.

TOWN OF ALTON

Argued: September 17, 2008
Opinion Issued: October 8, 2008

*Wattendorf & Nary, P.A.*, of Durham (*George E. Wattendorf* on the brief and orally), for the petitioner.

*Gallagher Callahan & Gartrell, P.C.*, of Concord (*Charles P. Bauer* on the brief and orally), for the respondent.

DUGGAN, J. The respondent, Town of Alton (Town), appeals an order of the Superior Court (*Smukler*, J.) ruling that RSA 43:7 (2003) applied to the termination hearing of the petitioner, Alton Police Lieutenant Edward Correia, and required the three sitting selectmen to appoint alternates for the two members who had recused themselves. Because we hold that RSA chapter 43 does not apply to the termination of police officers, we reverse and remand.

The record supports the following relevant facts. In 2006, the Alton town administrator and town counsel began an investigation regarding alleged misconduct by command police staff. The investigation led to the resignation of the police captain and the discharge of the police chief in accordance with RSA 105:2-a (Supp. 2007). Correia was placed on administrative leave pending the results of the investigation. At its conclusion, the town administrator gave Correia the option of resigning or facing possible demotion or termination by the Board of Selectmen (Board). Correia requested a public hearing in accordance with RSA 41:48 (2003) and RSA chapter 91-A (2001 & Supp. 2007).

The Board held a three-day hearing. At its start, Correia moved to disqualify all five board members because they had just terminated the police chief and had thus already formed opinions on the matter. Two of the

board members recused themselves while the remaining three stated they had not yet formed an opinion. Correia's attorney then requested that the remaining members appoint two alternates to fill the seats of the disqualified members. The chair of the Board replied that they had tried to find alternates but could not, and would thus proceed with three selectmen, which constituted a quorum under RSA 41:8 (2003). At the close of the hearing, the Board found Correia had committed four of the six alleged acts and voted 2-1 to terminate his employment. Correia appealed the Board's decision to the superior court.

Correia presented two categories of arguments before the trial court. First, he argued that procedural flaws in the hearing before the Board violated his due process rights. Second, he argued that the Board erred in not applying RSA chapter 43 to his hearing. The trial court made no ruling on the procedural issues, but reversed the Board's decision because it failed to appoint two alternates in accordance with RSA 43:7. The Town appealed that decision.

On appeal, the Town argues that the trial court erred in applying RSA 43:7, and should have looked only to RSA 41:48. The Town argues that RSA chapter 43 makes no reference to police officers whereas RSA 41:48 does. Correia responds that "[c]hapter 43 is the only statute governing procedural requirements for notice and hearing concerning removal of public officials," and is thus the only procedure available to the Board. Correia also argues that the hearing violated his due process rights.

■ The interpretation of a statute is a question of law, which we review *de novo. N.H. Dep't of Envtl. Servs. v. Marino*, 155 N.H. 709, 713 (2007). We are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *DaimlerChrysler Corp. v. Victoria*, 153 N.H. 664, 666 (2006). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Id.* When the language of a statute is clear on its face, its meaning is not subject to modification. *Dalton Hydro v. Town of Dalton*, 153 N.H. 75, 78 (2005). We will neither consider what the legislature might have said nor add words that it did not see fit to include. *Id.* Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. *DaimlerChrysler Corp.*, 153 N.H. at 666.

■ The Town argues that the trial court should have applied only RSA 41:48. That provision states that "[a]ny permanent constable or police officer who is either elected . . . or appointed for full-time duty . . . shall continue to hold such office during good behavior, unless sooner removed for cause by the selectmen, after notice and hearing." Correia responds that, because no procedure is prescribed apart from a hearing requirement,

the Board must use the procedures found in RSA chapter 43, the only procedures available for adversarial termination of town officials. We hold, however, that RSA 41:48 is not, on its face, an ambiguous statute. Thus, had the legislature intended RSA chapter 43 to apply, it would have explicitly stated such within the text of RSA 41:48, as it did for the removal of other town officials within RSA chapter 41.

Regarding the removal of town clerks, for example, the legislature provided that, "If a hearing before the governing body is requested, it shall be . . . [c]onducted in accordance with RSA 91-A and RSA 43 . . . ." RSA 41:16-c, IV(a) (Supp. 2007). Likewise, for the removal of treasurers, "If a hearing before the governing body is requested, it shall be . . . [c]onducted in accordance with RSA 91-A and RSA 43 . . . ." RSA 41:26-d, IV(a) (Supp. 2007). The legislature used the same language for the removal of tax collectors. RSA 41:40, IV(a) (Supp. 2007). Of the seven categories of public officers covered by RSA chapter 41 (selectmen, town clerk, town treasurer, town auditor, collector of taxes, overseers of public welfare, and permanent constables and police officers), the legislature prescribed RSA chapter 43 removal procedures for only three categories. Reading this "in the context of the overall statutory scheme and not in isolation," *DaimlerChrysler Corp.*, 153 N.H. at 666, requires that we interpret this as intentional. Had the legislature intended for police officers to be afforded RSA chapter 43 procedures, it knew what language to use. *Cf. Appeal of Baldoumas Enters.*, 149 N.H. 736, 739 (2003) (stating that language elsewhere in statutory scheme "demonstrates that when the legislature intends to create liability for negligence instead of strict liability, it knows how to do so"). By referencing RSA chapter 43 in only some portions of RSA chapter 41, the legislature clearly intended RSA chapter 43 to apply to some but not all of the officials covered by that chapter.

At oral argument, Correia suggested that the reason RSA 41:48 fails to reference RSA chapter 43 is because the former dates from 1945 and the legislature has not yet reexamined it. We do not find this persuasive. The extended period the statute has been in effect militates against an interpretation that the legislature has not had the opportunity to add language referencing RSA chapter 43. The legislature has amended RSA 41:48 twice since its enactment, and did not see fit to add a reference to RSA chapter 43 on either occasion. This is particularly compelling given that the language discussed above, referencing RSA chapter 43, was added by a single act adopted in 1993. *See* Laws 1993, ch. 181. Because the legislature chose to add that language to some, but not all, of the categories of officials covered by RSA chapter 41, we are neither able nor willing to "consider what the legislature might have said nor add words that it did not

see fit to include." *Dalton Hydro*, 153 N.H. at 78. We therefore do not read RSA 41:48 to require a hearing in accordance with RSA chapter 43.

The town also argues that the introductory language of RSA 43:1 (2003), stating that RSA chapter 43 applies to "question[s] affecting the conflicting rights or claims of different persons" does not apply to police officer termination hearings. For reasons similar to our above analysis of RSA 41:48, we agree. For the language of RSA 43:1 to mandate RSA chapter 43 procedures for police officers, it would necessarily need to include *all* public officials. If that were true, there would be no need for the legislature to create specific mandates for RSA chapter 43 procedures in any provisions pertaining to public officials in RSA chapter 41. The specific mandates in RSA 41:16-c, 41:26-d and 41:40, however, lead us to conclude that the legislature did not intend the language of RSA 43:1 to encompass the termination hearings of public officials in general, nor police officers in particular.

We conclude that RSA chapter 43 does not apply to the termination hearing of a police officer. Thus, the trial court erred in applying the procedures of RSA chapter 43 to this case and we need not reach the parties' remaining arguments. We therefore reverse and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.