Rockingham
No. 2012-428

CHARLES A. ROBERTS

v.

TOWN OF WINDHAM

Argued: May 9, 2013
Opinion Issued: July 16, 2013

*Bernstein, Shur, Sawyer & Nelson, P.A.*, of Manchester (*Gregory E. Michael* and *Christopher G. Aslin* on the brief, and *Mr. Michael* orally), for the petitioner.

*Beaumont & Campbell Prof. Ass'n.*, of Salem (*Bernard H. Campbell* on the brief and orally), for the respondent.

CONBOY, J. The petitioner, Charles A. Roberts, appeals an order of the Superior Court (*Delker*, J.) affirming a decision of the Town of Windham Zoning Board of Adjustment (ZBA) denying his request under RSA 674:39-aa (Supp. 2012) to reverse the administrative merger of certain lots by the respondent, Town of Windham (Town). We affirm.

The following facts are supported by the record or are otherwise undisputed. The petitioner owns an approximately one-acre parcel of land on Cobbetts Pond Road with frontage on Cobbetts Pond in Windham (the

Property). The Property is identified as a single lot on the Town's tax map and has apparently been so identified since the Town developed its tax maps in the 1960s. The Property originated, however, from seven separate lots as shown on the 1913 "Plan of Horne Heirs" recorded in the Rockingham County Registry of Deeds (the Horne plan): five full lots (9 through 13) and two partial lots (8 and 14). The Horne plan was recorded by Clara B. Horne in 1913, and depicts her approximately 12.5-acre, nineteen-lot subdivision along the shore of Cobbetts Pond.

In 1918, Horne conveyed lots 9 through 11, by a single deed, to the petitioner's grandfather, George E. Lane. Specifically, the deed conveyed "[a] certain tract or parcel of land situate on the shore of Cobbetts Pond in Windham . . . meaning and intending to convey lots #9, #10, and #11." In 1920, Horne also deeded lot 12 to Lane. In 1926, Lane also obtained a portion of lot 8 (for ease of reference, partial lot 8 is hereinafter referred to simply as "lot 8").

Lane built structures on all of the lots except lot 12. On lot 10, Lane built a seasonal cottage, a garage/workshop, a screen room, and a dock. The seasonal cottage extends across the boundary line onto lot 11. The garage is two inches from the boundary line between lots 10 and 9 and faces toward lot 9. Thus, one must traverse lot 9 to access the garage. On lot 9, Lane built a "multi-use building" (the bunkhouse), woodshed, privy, dog house, and another dock. The bunkhouse straddles the boundary line between lots 9 and 8. A single driveway provides access from Cobbetts Pond Road to lot 10 over lot 9.

In 1927, Lane conveyed all of the lots to Alice Lane, who subsequently conveyed them to Ruth Lane Roberts. In 1962, Ruth Roberts acquired title to lot 13 and one half of lot 14 (for ease of reference, partial lot 14 is hereinafter referred to simply as "lot 14"). Thus, as of 1962, Ruth Roberts owned the Property as it exists today, consisting of lots 8 through 14. In 1995, the Property was conveyed to the petitioner.

In the 1960s, the Town apparently administratively merged the lots into a single lot: they were designated as a single lot for tax purposes and given a single street address. Neither the petitioner nor any previous owner in the chain of title applied to the Town to merge the lots. *See, e.g.*, RSA 674:39-a (Supp. 2012) (allowing an owner of two or more contiguous and preexisting approved lots to merge them by application to a town planning board).

In 2011, the legislature enacted RSA 674:39-aa, which provides that lots that were "involuntarily merged prior to September 18, 2010," shall be "restored to their pre-merger status" upon request of the owner, subject to certain conditions. RSA 674:39-aa, II. " 'Involuntary merger' . . . mean[s] lots merged by municipal action for zoning, assessing, or taxation purposes

without the consent of the owner." RSA 674:39-aa, I(a). An owner is not entitled to such restoration if "any owner in the chain of title voluntarily merged his or her lots." RSA 674:39-aa, II(b). "Voluntary merger" means a merger expressly requested under RSA 674:39-a, or "any overt action or conduct that indicates an owner regarded said lots as merged such as, but not limited to, abandoning a lot line." RSA 674:39-aa, I(c). The municipality bears the burden to prove voluntary merger. *See* RSA 674:39-aa, II(b).

Following the statute's passage, the petitioner applied to the Windham Board of Selectmen (Selectboard) seeking to "unmerge" the lots from their single lot designation on the Town's zoning and tax maps and to create four lots consisting of: lots 8 and 9; lots 10 and 11; lot 12; and lots 13 and 14. The Selectboard held a meeting to consider the application and determined that the Town had involuntarily merged lots 12-14. The Selectboard, however, concluded that lots 8 through 11 had been voluntarily merged and, thus, denied the petitioner's request to unmerge the four lots.

The Selectboard's decision denying the petitioner's request to unmerge lots 8 through 11 rested upon two grounds. First, the Selectboard relied upon the fact that lots 9 through 11 were conveyed to Lane as one "tract" in a single deed. Second, the Selectboard determined that the Town proved overt owner action to merge the lots based upon the physical layout of the structures. Specifically, the Selectboard noted that lots 8 through 11 are served by a single driveway, that construction of ancillary buildings such as the bunkhouse is a common and typical practice on a "waterfront estate," and that the garage on lot 10 is close to the lot 9 boundary line and is accessed from lot 9.

The petitioner appealed the decision regarding lots 8 through 11 to the ZBA. *See* RSA 674:39-aa, III; RSA 676:5 (Supp. 2012). The ZBA affirmed the Selectboard's decision for the reasons found by the Selectboard, as well as an additional reason: that by accepting the Town's taxation of the lots as a single lot, the owners voluntarily merged the lots.

The petitioner moved for a rehearing, *see* RSA 677:3 (2008), which the ZBA denied. The petitioner then appealed the ZBA's decision to the superior court, *see* RSA 677:4 (Supp. 2012), which affirmed the ZBA's decision. This appeal followed.

■ The petitioner first argues that the superior court applied an incorrect standard of review. Typically, judicial review in zoning cases is limited. *Brandt Dev. Co. of N.H. v. City of Somersworth*, 162 N.H. 553, 555 (2011). The factual findings of a zoning board are deemed *prima facie* lawful and reasonable, and a zoning board's decision will not be set aside by the superior court absent errors of law unless it is persuaded by the balance of probabilities, on the evidence before it, that the zoning board decision is

unlawful or unreasonable. *Id.*; *see* RSA 677:6 (2008). The superior court applied this standard to the ZBA's decision. The petitioner contends, however, that the enactment of RSA 674:39-aa altered the deferential standard of review with respect to the issue of proving the voluntary merger of lots.

Resolving this issue requires that we engage in statutory interpretation. We are the final arbiters of the legislature's intent as expressed in the words of a statute considered as a whole. *Radziewicz v. Town of Hudson*, 159 N.H. 313, 316 (2009). When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* We also presume that the legislature knew the meaning of the words it chose, and that it used those words advisedly. *See DaimlerChrysler Corp. v. Victoria*, 153 N.H. 664, 667 (2006). The interpretation of a statute is a question of law, which we review *de novo*. *See Radziewicz*, 159 N.H. at 316.

In 2010, the legislature amended RSA 674:39-a to prohibit municipalities from merging "preexisting subdivided lots or parcels except upon the consent of the owner." Laws 2010, 345:1. In addition, RSA 674:39-aa, II entitles an owner of involuntarily merged lots, at the owner's request, to restore the lots to their premerger status. However, RSA 674:39-aa prohibits restoration of lots if "any owner in the chain of title voluntarily merged his or her lots." RSA 674:39-aa, II(b). The municipality has the burden to prove voluntary merger. *See id.*

The petitioner contends that by prohibiting municipalities from involuntarily merging lots under RSA 674:39-a and allowing owners of merged lots to request restoration under RSA 674:39-aa, the legislature sought to balance the right of municipalities to regulate land use and the constitutional right of land owners to use their land for reasonable purposes. He argues that by placing the burden of proof on municipalities to prove voluntary merger, the legislature sought to prohibit municipalities from "inventing" mergers based upon inconclusive facts in order to block unpopular applications. He concludes that by "shifting the burden of proof to municipalities," the legislature "necessarily also altered the deferential standard of review on appeal to the [superior court]." We disagree.

██ The petitioner's argument conflates two concepts: a party's burden of proof and an appellate tribunal's standard of review. A burden of proof is "[a] party's duty to prove a disputed assertion or charge," BLACK'S LAW DICTIONARY 223 (9th ed. 2009), whereas a standard of review is "[t]he criterion by which an appellate [tribunal] . . . measures the constitutionality

of a statute or the propriety of an order, finding, or judgment entered by a lower [tribunal]," *id.* at 1535. That a party bears the burden of proof at trial does not dictate the standard of review applied on appeal. As the superior court aptly noted, the State in a criminal case bears the highest burden of proof at trial: beyond a reasonable doubt. *See* RSA 625:10 (2007). Yet, if the State carries its burden, the standard of review on appeal is often deferential to the State. *See, e.g., State v. Hull*, 149 N.H. 706, 712 (2003) ("To prevail on a challenge to the sufficiency of the evidence, the defendant must prove that no rational fact finder at trial, viewing all of the evidence presented in the light most favorable to the State, could have found guilt beyond a reasonable doubt.").

 Here, RSA 674:39-aa expressly places the *burden of proof* on the municipality to prove voluntary merger; however, the statute makes no provision for an alternate *standard of review*. Because we presume the legislature understood the meaning of the words it chose and used those words advisedly, *see DaimlerChrysler Corp.*, 153 N.H. at 667, and we do not add words to a statute that the legislature did not see fit to include, *see Radziewicz*, 159 N.H. at 316, we do not construe the plain language of RSA 674:39-aa, II(b) to alter the deferential standard of review applicable in zoning cases under RSA 677:6.

██ The fact that one of the goals of the statute may be to protect individual property rights does not change our interpretation. Although we interpret a statute in light of its overall purpose, *see Atwater v. Town of Plainfield*, 160 N.H. 503, 508 (2010), in so doing, we do not ignore the statute's plain language, *cf.* 2A N. SINGER & J.D. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 46:1, at 148-49 (7th ed. 2007) ("Where the words of the statute are clear and free from ambiguity, the letter of the statute may not be disregarded under the pretext of pursuing its spirit." (Quotation omitted)). Here, we will not read into RSA 674:39-aa an alternate standard of review merely because to do so might benefit the petitioner's property rights. Thus, we conclude that the superior court did not err in applying our usual deferential standard of review to the ZBA's decision. *See* RSA 677:6.

Next, the petitioner argues that the superior court erred by upholding the ZBA's decision to affirm the Selectboard's finding of "voluntary merger" of lots 8 through 11 because the evidence before the Selectboard was insufficient to satisfy the Town's burden. Our review of the superior court's decision, like its review of the ZBA's decision, is limited: we will uphold the court's decision unless the evidence does not support it or it is legally erroneous. *Brandt Dev. Co.*, 162 N.H. at 555. When, as here, the appealing party challenges the sufficiency of the evidence, we consider

"whether a reasonable person could have reached the same decision as the trial court based on the evidence before it." *Mt. Valley Mall Assocs. v. Municipality of Conway*, 144 N.H. 642, 647 (2000) (quotation omitted).

As noted above, the Selectboard found that the Town satisfied its burden of proving "overt action or conduct" to merge lots 8 through 11 based upon the original conveyance by Horne of lots 9 through 11 as one tract in a single deed, and the physical characteristics of the lots and their structures. The ZBA affirmed based upon those two factors and the owners' acquiescence to taxation of the Property as a single lot. In upholding the ZBA's decision, the superior court relied upon the physical characteristics of the lots and their structures and upon the owners' acquiescence to taxation, but concluded that "[t]he fact that [Horne] conveyed separate parcels of land in one deed does not, in itself, indicate an intent to ignore the separate lot designations."

■ We agree that Horne's conveyance of lots 9 through 11 as one tract in a single deed does not, standing alone, support a finding of voluntary merger. The deed specifically provided that Horne was "meaning and intending to convey lots #9, #10, and #11." We also acknowledge that the acquiescence to taxation as a single lot does not, standing alone, support a finding of voluntary merger. *See Hill v. Town of Chester*, 146 N.H. 291, 294 (2001) ("[T]he method by which a town taxes its land is not dispositive in determining zoning questions."). As the petitioner notes, lots 8 through 14 were all taxed as a single lot; the Selectboard nonetheless "unmerged" lots 12-14.

■ The lots' physical characteristics, however, were central to the superior court's decision. It upheld the finding that the garage on lot 10 was constructed within two inches of lot 9 and faces toward lot 9; that the lots share a driveway; and that ancillary buildings, such as the bunkhouse, are common and typical of a "waterfront estate." The petitioner argues that these facts do not support a finding of voluntary merger and that only through conjecture and speculation could the Town demonstrate the prior owners' intent. For example, although he concedes that the placement of the garage near the lot line may be consistent with an intent to merge the lots, the petitioner argues that it is also consistent with an intent to maintain the property as separate lots because Lane — the owner who constructed the garage — may have believed that the garage was farther from the lot line than shown on the survey. Thus, he argues that such evidence is insufficient to support a finding of voluntary merger. We disagree.

■ Lane constructed the garage on lot 10 not only within two inches of lot 9, but also so that it faced toward lot 9. To access the garage, one must traverse lot 9. Further, a single driveway leads from Cobbetts Pond Road over lot 9 to lot 10. A reasonable interpretation of the placement of the garage is that Lane did not regard the lots as separate. *See* RSA 674:39-aa, I(c). We disagree with the petitioner that the possibility that Lane may have believed the garage was farther from the lot line renders the evidence inconclusive. Our role on appeal is not to determine whether any contrary conclusions could possibly be drawn from the evidence; instead, we determine whether the conclusions so drawn are reasonable. *See Mt. Valley Mall Assocs.*, 144 N.H. at 647.

Additionally, the superior court relied on more than the placement of the garage. The "seasonal cottage" sits on both lots 10 and 11, and Lane built a "multi-use" structure known as the "bunkhouse" on lots 9 and 8. Because of the structure's classification as a "bunkhouse," and not as an additional cottage, it is not unreasonable to conclude that the structure was intended to be used in conjunction with the seasonal cottage as part of a "waterfront estate," thereby evincing an intent to use the lots as one. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 297 (unabridged ed. 2002) (defining "bunkhouse" as "a rough[,] simple building providing sleeping quarters," as used to house persons such as "ranch hands"). Finally, although a shared driveway alone may not be indicative of an intent to merge lots, when viewed in conjunction with evidence of the placement of the garage and bunkhouse, the use of a single driveway to serve multiple lots supports the conclusion that the prior owners intended to merge the lots.

In his brief, the petitioner parses each of these uses and offers explanations for why each individual use does not constitute "voluntary merger." However, the superior court did not analyze each use in isolation, nor was it required to under RSA 674:39-aa. Instead, in affirming the ZBA's decision, the court considered "the use of the property in its entirety." The totality of the evidence reasonably supports a finding that the petitioner's predecessors voluntarily merged the lots under RSA 674:39-aa. Accordingly, we hold that the superior court's decision affirming the ZBA's decision is not unlawful or unreasonable.

As a final matter, the petitioner raises an issue in his notice of appeal that he does not brief. Thus, it is deemed waived. *See In re Estate of King*, 149 N.H. 226, 230 (2003).

*Affirmed.*

DALIANIS, C.J., and HICKS, LYNN and BASSETT, JJ., concurred.