Public Employee Labor Relations Board
No. 2000-335

APPEAL OF THE UNIVERSITY SYSTEM OF
NEW HAMPSHIRE BOARD OF TRUSTEES

(New Hampshire Public Employee Labor Relations Board)

Argued: November 14, 2001
Opinion Issued: April 19, 2002

*Morgan, Brown & Joy LLP*, of Boston, Massachusetts (*Nicholas DiGiovanni, Jr.* and *Maura D. McLaughlin* on the brief, and *Mr. DiGiovanni, Jr.*, orally) and *Ronald Rodgers*, of Durham, general counsel, University System of New Hampshire, on the brief, for the petitioner.

*James F. Allmendinger*, of Concord, staff attorney, NEA-New Hampshire, by brief and orally, for the respondent, Adjunct Association of Keene State College, NEA-New Hampshire.

BROCK, C.J. The University System of New Hampshire Board of Trustees (University System) appeals from a ruling of the public employee labor relations board (PELRB) certifying a bargaining unit of adjunct teaching faculty (adjunct faculty) who are currently employed and have taught at least two of the last three semesters at Keene State College. We understand the issues on appeal to be: (1) whether the doctrine of res judicata applies; (2) whether changes in the adjunct faculty's work conditions since 1977 warranted reconsideration of whether they are "temporary" employees; and (3) whether the PELRB's decision is clearly unjust and unreasonable, or unlawful. We affirm in part, vacate in part and remand.

The parties do not dispute the following facts. On June 2, 1999, the respondent, the Adjunct Association of Keene State College/NEA-NH (Association), filed a petition for certification with the PELRB seeking to represent approximately 147 adjunct faculty at Keene State College, a member institution of the University System. Prior to the hearing, the parties stipulated that the proposed bargaining unit did not include: (1) employees who teach non-credit courses; (2) employees who teach courses for which no compensation is paid; (3) any tenure or tenure-track employees; (4) employees known as PATs (Professional-Administrator-Technical) who do some instruction as part of their regular duties; and (5) Faculty-in-Residence.

The University System opposed the petition, arguing that the adjunct faculty are "temporary employees" and therefore excluded from bargaining under RSA 273-A:1. *See* RSA 273-A:1, IX(d) (1999). It also asserted that because the same issues had been fully litigated and finally decided in *Keene State College Education Ass'n, NHEA/NEA v. The State of New Hampshire*, 119 N.H. 1 (1979), consideration of the Association's petition was barred by res judicata. Following a hearing, the hearing officer ruled that res judicata did not preclude consideration of the case,

that the adjunct faculty were not temporary employees and that adjunct faculty who were then currently teaching and who had taught two of the last three semesters were eligible to form a bargaining unit.

The PELRB denied the University System's motions for reconsideration and rehearing, and an election was held in the unit on April 26, 2000, with a majority of the eligible adjuncts voting for union representation. After the Certification of Representative and Order to Negotiate was issued on May 3, 2000, the University System appealed to this court. At issue in this appeal is the validity of the PELRB's decision affirming the hearing officer's decision that the Keene adjunct faculty were not temporary employees and that adjunct faculty who were then teaching and who had taught two of the last three semesters were eligible to form a bargaining unit.

We adhere to the standard of review set forth in RSA 541:13 (1997). *See Appeal of State of N.H.*, 138 N.H. 716, 720 (1994). Thus, to succeed on appeal, the University System must show that the PELRB's decision is unlawful, or clearly unjust or unreasonable. *Appeal of Town of Newport*, 140 N.H. 343, 345 (1995). The PELRB's findings of fact are presumptively lawful and reasonable, and will not be disturbed if they are supported by the record. *Id.*; RSA 541:13 (1997). However, we act as the final arbiter of the meaning of the statute, and will set aside erroneous rulings of law. *See* RSA 541:13; *Appeal of Campton School Dist.*, 138 N.H. 267, 269 (1994).

We address first the University System's contention that res judicata precludes relitigation of this matter. The University System asserts that the issue of whether adjunct faculty at Keene State are temporary employees was fully litigated by the same parties who are parties to this action, and was finally decided in *Keene State*, 119 N.H. 1.

"Spurred by considerations of judicial economy and a policy of certainty and finality in our legal system, the doctrines of res judicata and collateral estoppel have been established to avoid repetitive litigation so that at some point litigation over a particular controversy must come to an end." *Eastern Marine Const. Corp. v. First Southern Leasing*, 129 N.H. 270, 273 (1987) (quotation omitted). Res judicata, or claim preclusion, "bars the relitigation of any issue that was or might have been raised in respect to the subject matter of the prior litigation." *Grossman v. Murray*, 141 N.H. 265, 269 (1996) (quotation and emphasis omitted). In determining whether two actions are the same cause of action for the purpose of applying res judicata, we consider whether the alleged causes of action arise out of the same transaction or occurrence. RESTATEMENT (SECOND) OF JUDGMENTS § 24, at 199 (1982). We conclude that the instant cause of action did not arise out of the same transaction or occurrence as the cause of action in *Keene State*.

RSA 273-A:8 (1999) authorizes the PELRB to certify an appropriate bargaining unit when ten or more public employees file a petition. RSA 273-A:1, IX(d) defines "public employee," in pertinent part, as "any person employed by a public employer except ... (d) [p]ersons in a probationary or temporary status, or employed seasonally, irregularly or on call."

In 1976, the Keene State College Education Association (KSCEA), affiliated with the New Hampshire Education Association, filed a petition for representation with the PELRB seeking to represent a bargaining unit of all educational professionals employed by Keene State College, including both adjunct faculty and full-time, tenure-track faculty. At one point in the proceedings, the PELRB ruled that adjunct faculty were "temporary employees" and, therefore, not covered by the statute. *Keene State*, 119 N.H. at 2. The PELRB also held that even if the adjunct faculty were not considered temporary employees, they did not share a community of interest with full-time, tenure-track faculty. *Id.*

■ On appeal, we affirmed, holding that the PELRB's standard for distinguishing temporary from permanent status based upon whether the employees have a "reasonable expectation of continued employment" was a fair interpretation of the statute. *Id.* at 3 (quotation omitted). We also held that the PELRB's conclusion that the adjunct faculty were temporary employees was grounded on extensive factual investigation, and was adequately supported by the record. *Id.* Thus, the PELRB's decision was specifically grounded upon facts as they existed in or about 1977. Because the facts relevant to whether the adjunct faculty are "temporary employees" may have changed in the past twenty years, the 1999 proceedings cannot be said to arise out of the same factual "transaction" as the 1977 proceedings. Therefore, we conclude that res judicata did not preclude the PELRB from revisiting this issue in 1999.

The University System argues that our decision in *Eastern Marine*, 129 N.H. 270, precludes the adjunct faculty from presenting "new evidence" that a bargaining unit composed of the adjunct faculty was appropriate. The reference in *Eastern Marine*, 129 N.H. at 275, to evidence not presented in the first action assumes that both actions arise out of the same factual transaction and that the evidence existed at the time of the first action. Where, as here, the factual circumstances have changed between the first and second action, res judicata does not bar the PELRB from revisiting the question of whether adjunct faculty are temporary employees.

The University System next argues that even if res judicata does not apply, the PELRB erroneously upheld the hearing officer's decision that changes in the adjunct faculty's work conditions since 1977 warranted

reconsideration of whether they are temporary employees. Regarding this point, the hearing officer concluded, in pertinent part, that

> time has brought changes in the conditions of employment of adjunct faculty. In the present case, it is clear that Bonnie Insull and Michael French, representative of the adjuncts, expect and are expected to teach semester after semester, year after year contrary to the implication of the time frame stated in the contract they sign. A past practice has been established that represents a reasonable expectation of continuing employment. The expectation operates to the mutual advantage of the college and the lecturer. The administration expects to be notified if a lecturer will not be meeting the obligation suggested by the catalogue printed in March from which students choose the classes before the end of the prior academic year. The inclusion of lecturers [sic] names in the course catalogue is a change that occurred when the use of lecturers became more usual. The college would be hard put to operate without its established cadre of adjunct lecturers.

The PELRB did not disturb this conclusion.

Assuming, without deciding, that there must be changed circumstances for the PELRB to reconsider in 1999 whether adjunct faculty are temporary employees, we conclude that the determination that conditions of the employment of adjunct faculty have changed since 1977 was not unjust, unreasonable or contrary to law.

■ As the hearing officer specifically found, the number of adjunct faculty has increased substantially from fifty-one employees in 1977 to 170 in 1998. Longevity records show that forty adjunct faculty members have taught for ten semesters or more. The college's pay schedule for adjunct faculty now recognizes longevity by increasing the amount paid per course in relation to past semesters taught. These changes are significant because they suggest both that the college's dependence upon adjuncts has increased markedly, and that there is some expectation that adjuncts will return year after year. These factors represent a marked change in circumstances between 1977 and 1999 and support the conclusion that at least some of the adjunct faculty have a "reasonable expectation of continued employment." See Comm. College of Phila. v. Com., Pa. Labor, 432 A.2d 637, 641 (Pa. Commw. Ct.), aff'd per curiam, 437 A.2d 942 (Pa. 1981).

The University System next argues that the PELRB's conclusion that adjunct faculty are not temporary employees was unjust and unreasonable

because the decision "contains numerous critical factual errors, and omits mention of key evidence." In particular, the University System asserts that certain aspects of findings of fact numbers 6, 7, 8, 13 and 14 amount to "critical factual errors." We conclude, based upon our review of the record, that these findings are either amply supported by the record, *see Town of Croydon v. Current Use Advisory Bd.*, 121 N.H. 442, 446 (1981), or that the errors or omissions are harmless because they are minor in relation to the independent evidence in the record supporting the board's conclusion. *See Bothwick v. State*, 119 N.H. 583, 591 (1979).

The University System also asserts that the PELRB disregarded a number of "critical facts" supported by undisputed testimony, including, among other things, recognition that: (1) the contract states clearly that there is no express or implied expectation of future employment; (2) there are no promotion opportunities for adjuncts; (3) adjuncts are often hired "at the last minute"; and (4) adjuncts, unlike tenured faculty, are given no role in the governance of the institution and do not have the same privileges and obligations that tenured faculty have.

█ It is true that while the PELRB found that adjuncts signed contracts of one semester shortly before classes begin, it did not specifically note the disclaimer contained in the contracts. We note, however, that the fact that adjunct faculty do not have a contractual right to renewal of their contracts does not necessarily diminish their reasonable expectation of continued employment. *See University of San Francisco*, 265 N.L.R.B. 1221 (1984).

█ The University System also correctly asserts that there are differences between adjunct and tenure-track faculty, including the adjunct faculty's lack of promotion opportunities and lack of a role in the governance of the institution. However, while these facts may be highly relevant to a determination of whether the full-time faculty and adjuncts share a "community of interest" such that they belong in the same bargaining unit, *see* RSA 273-A:8, I, such facts are only marginally relevant to a determination of whether adjuncts have a "reasonable expectation of continued employment."

█ Finally, the record does not compel a finding, as the University System asserts, that adjunct faculty are hired at the last minute to fill enrollment-driven needs, without the level of scrutiny given to full-time faculty. While the adjunct faculty do not sign written contracts with the college until a few weeks before the start of the semester, there was evidence that oral commitments are made months earlier. Indeed, the

contracts recite that "this will confirm the oral agreement that you will teach" in the upcoming semester. Course schedules for the fall issued in March often include the names of adjunct faculty. Furthermore, the University System's assertion that adjunct faculty are hired in a last-minute scramble is belied by the fact that adjunct faculty teach, as the PELRB specifically found, approximately one-third of the classes at the college.

The University System next argues that the PELRB's decision that adjunct faculty are not "temporary" was flawed to the extent that it focused on the value of the adjunct faculty's work to the employer, not on the "reasonable expectation of continued employment." We agree that the fact that adjuncts perform a valuable service to the college in terms of teaching load cannot alone form the basis for holding that the adjuncts have a "reasonable expectation of continued employment." *Cf. Appeal of Town of Stratham*, 144 N.H. 429, 431 (1999). However, the PELRB's conclusion, amply supported by the evidence, that "the college would be hard put to operate without its established cadre of adjunct lecturers," is relevant to determining whether the adjuncts have a "reasonable expectation of continued employment." The nature and extent of the college's reliance upon the adjunct faculty could reasonably lead them to expect that the college would be likely to rehire them.

The University System argues, next, that we should abandon our "reasonable expectation of continued employment" standard to adopt a "date certain test"; *i.e.*, if an employee's employment will end on a "date certain," then the employee will be considered temporary. *See N.L.R.B. v. New England Lithographic Co. Inc.*, 589 F.2d 29, 33 (1st Cir. 1978). The University System asserts that *New England Lithographic* supports its view that the "date certain by which the employment will end" is the date specified in an adjunct's contract. Assuming, without deciding, that *New England Lithographic* stands for the broad proposition that the terms of the employment contracts alone should determine whether the adjunct faculty were temporary, nothing in *New England Lithographic* or the University System's argument persuades us that our adoption of the "reasonable expectation of continued employment" standard has proven unworkable or was badly reasoned. *See Providence Mut. Fire Ins. Co. v. Scanlon*, 138 N.H. 301, 303-04 (1994) ("*stare decisis* is essential if case-by-case judicial decision-making is to be reconciled with the principle of the rule of law, for when governing legal standards are open to revision in every case, deciding cases becomes a mere exercise of judicial will with

arbitrary and unpredictable results" (quotation omitted)). Accordingly, we decline to abandon it.

■ Finally, the University System argues that the PELRB's determination that the unit should be composed of adjunct faculty who are presently employed and have taught two out of the last three semesters is flawed. We agree. Because the PELRB made no supporting findings and did not articulate the reasons for this determination, we are unable to meaningfully review this portion of the PELRB's decision. *See N.H.-Vt. Health Serv. v. Comm'n of Ins.*, 122 N.H. 268, 273 (1982). Therefore, we vacate this ruling. We note that while we are not persuaded by the University System's argument that the PELRB disregarded allegedly "critical facts" when it determined that the adjunct faculty have a "reasonable expectation of continued employment," the PELRB is free to consider the entire record before it when considering the appropriate composition of the bargaining unit.

*Affirmed in part; vacated in part; remanded.*

BRODERICK, J., sat for oral argument but did not take part in the final vote; NADEAU, DALIANIS and DUGGAN, JJ., concurred.