Belknap
No. 2007-257

HARRY A. SLEEPER

v.

THE HOBAN FAMILY PARTNERSHIP & a.

Argued: June 26, 2008
Opinion Issued: July 25, 2008

*Devine, Millimet & Branch, P.A.*, of Manchester (*David P. Eby* on the brief and orally), for the petitioner.

*Matthew J. Lahey, P.A.*, of Laconia (*Matthew J. Lahey* on the brief and orally), for the respondents.

DALIANIS, J. The petitioner, Harry A. Sleeper, appeals the order of the Superior Court (*Smukler*, J.) partially granting and partially denying his petition for declaratory judgment. While the trial court ruled that the petitioner had an easement by deed to access Beech Street in Alton for the purpose of using a beach area, it denied his other claims on the ground that they were barred by res judicata. The respondents, The Hoban Family Partnership, John J. Hoban, Patrick J. Hoban and Diane V. Hoban, cross-appeal the trial court's ruling in the petitioner's favor on his easement by deed claim. We affirm the trial court's ruling on the petitioner's claim to an easement by deed, reverse its res judicata ruling, and remand for further proceedings consistent with this opinion.

The record supports the following facts. Beech Street was originally depicted on a plan recorded in 1889 by the Winnipesaukee Land Company. It ran perpendicular from Lake Shore Avenue to the Lake Winnipesaukee shoreline, bisecting Railroad Avenue and ending on Main Street. In 1979, the Town of Alton's board of selectmen released Lake Shore Avenue and the portion of Beech Street that ran from Lake Shore Avenue to Railroad

Avenue from all public servitude and interests. The portion of Beech Street that was discontinued became tax lot 76. There is a beach at the end of this lot.

The respondents now own tax lot 76, having purchased it in 1991. The deed conveying tax lot 76 to the respondents stated that the lot was conveyed subject to "whatever rights may exist in others to cross and recross and to use the beach area on the shore of Lake Winnipesaukee" and "to a reservation in favor of the Grantors, their heirs and assigns, for the benefit of Tax Lot 36 . . . of access to and use of the said beach area." The respondents also own tax lot 57 on which they have a home. Tax lot 57 borders tax lot 76.

The petitioner owns tax lots 36, 55 and 55-1 in Alton. Tax lots 55 and 55-1 run along the shore of Lake Winnipesaukee; tax lot 36 is located a few blocks away from the shore. A portion of tax lot 55 abuts tax lot 76. The petitioner purchased tax lot 36 in 1991 and tax lots 55 and 55-1 in 1998.

In 1991, Albert S. and Joan K. Drew, who then owned tax lots 55 and 55-1, brought a quiet title action against respondent John J. Hoban, claiming title under a theory of adverse possession to "the parcel of land adjacent to, and westerly of" their land "with frontage on Lake Winnipesaukee" as shown in a shaded portion of a map submitted with their petition (the shaded area). A portion of Beech Street, including the end of the street on which there is a beach, was included in the shaded area. The court dismissed the Drews' petition, finding that although they had proved twenty years of continuous and uninterrupted use of the shaded area, they had not proved that their use was exclusive.

After this decision, the respondents erected a fence at the edge of Beech Street and the Drews' property and posted "no trespassing" signs. Shortly after purchasing the Drews' property, the petitioner removed the fence. The respondents continued to post "no trespassing" signs.

In 2005, the petitioner brought the instant petition, seeking, *inter alia*, a declaration that: (1) he is the rightful owner of Beech Street to the center-line point as it runs along his property; and (2) even if he does not own Beech Street, he may use it to access his property and/or the beach and dock area either because he has an easement to do so or pursuant to RSA 231:43 (Supp. 2007).

All parties moved for summary judgment. The trial court ruled that the doctrines of res judicata and collateral estoppel barred the petitioner's claims to the portion of Beech Street that had been litigated in the Drews' quiet title action, but ruled that the petitioner's claims to the portion of Beech Street that was not at issue in the Drews' quiet title action were not barred. Because disputed issues of material fact remained, a trial was held.

Following the trial, which included a view, the court ruled that, in fact, the doctrine of res judicata barred all of the petitioner's claims to Beech Street other than his claim to have an easement by deed. The court ruled that the deed to the respondents' property created an appurtenant easement, pursuant to which petitioner's tax lot 36 was the dominant estate to be benefited by use of an easement over respondents' tax lot 76 to access the beach area at the end of Beech Street. This appeal and cross-appeal followed. We first examine the petitioner's appeal and then the respondents' cross-appeal.

## I

The petitioner first challenges the trial court's post-trial determination that res judicata barred his claims to ownership of Beech Street as well as his claims to have a right to use the street for access either because of an easement or under RSA 231:43. The applicability of res judicata is a question of law that we review *de novo*. *Meier v. Town of Littleton*, 154 N.H. 340, 342 (2006). Res judicata precludes the litigation in a later case of matters actually decided, and matters that could have been litigated, in an earlier action between the same parties for the same cause of action. *Id.* For the doctrine to apply, three elements must be met: (1) the parties must be the same or in privity with one another; (2) the same cause of action must be before the court in both instances; and (3) a final judgment on the merits must have been rendered in the first action. *Id.* The petitioner contests elements (1) and (2).

The petitioner first contends that the Drew litigation could not act as a bar because he was not in privity with the Drews. Specifically, he asserts that privity did not exist because his interests in their litigation "were not in fact represented and protected." *Cook v. Sullivan*, 149 N.H. 774, 779 (2003). To the contrary, the petitioner was in privity with the Drews because he was their successor in interest. *See Innie v. W & R, Inc.*, 116 N.H. 315, 316 (1976); *see also Taylor v. Sturgell*, 128 S. Ct. 2161, 2172 (2008); RESTATEMENT (SECOND) OF JUDGMENTS § 43 (1982).

Although generally res judicata does not apply to nonparties to the original judgment, this rule is subject to exceptions. *Sturgell*, 128 S. Ct. at 2171-72 (construing federal common law). "[N]onparty preclusion may be justified based on a variety of pre-existing substantive legal relationships between the person to be bound and a party to the judgment." *Id.* at 2172. Qualifying relationships include that between a property owner and his successor in interest. *Id.*; *see* RESTATEMENT (SECOND) OF JUDGMENTS, *supra* § 43(1)(b). The rule that a successor in interest is bound by a judgment issued to his predecessor in interest serves important policy

interests. "[O]therwise a transfer of property would unsettle controversies which an action was intended to settle." RESTATEMENT OF JUDGMENTS § 89 comment *c* at 435 (1942).

■ "The substantive legal relationships justifying preclusion are sometimes collectively referred to as 'privity,' " *Sturgell*, 128 S. Ct. at 2172 n.8, although we have used the term more broadly to refer to a "functional relationship, in which, at a minimum, the interests of the non-party were in fact represented and protected in the prior litigation." *Cook*, 149 N.H. at 779. Here, because the petitioner is the successor in interest to the Drews, he is in privity with them and is bound by the judgment in their prior action. *See* RESTATEMENT (SECOND) OF JUDGMENTS, *supra* § 43(1)(b); *see also Innie*, 116 N.H. at 316. Contrary to the petitioner's assertions, we need not examine whether he and the Drews also were in privity by virtue of their functional relationship because the substantive legal relationship between them satisfies the privity requirement.

■ The petitioner next asserts that his claims in this lawsuit and the Drews' cause of action do not constitute the "same cause of action" for res judicata purposes. New Hampshire embraces the modern trend "to define cause of action collectively to refer to all theories on which relief could be claimed on the basis of the factual transaction in question." *Eastern Marine Const. Corp. v. First Southern Leasing*, 129 N.H. 270, 275 (1987); *see Goffin v. Tofte*, 146 N.H. 415, 417 (2001); RESTATEMENT (SECOND) OF JUDGMENTS § 24, at 197 (1982). Generally, "[i]n determining whether two actions are the same cause of action for the purpose of applying res judicata, we consider whether the alleged causes of action arise out of the same transaction or occurrence." *Appeal of Univ. System of N.H. Bd. of Trustees*, 147 N.H. 626, 629 (2002). Res judicata will bar a second action even though the plaintiff is prepared in the second action to present evidence or grounds or theories of the case not presented in the first action. *Brzica v. Trustees of Dartmouth College*, 147 N.H. 443, 455-56 (2002).

Under the RESTATEMENT (SECOND) OF JUDGMENTS, *supra* § 43, a judgment in an action that determines interests in real or personal property "[c]onclusively determines the claims of the parties to the action regarding their interests" in the "property involved in the action." The effect of such a judgment "is to delimit, as between such parties, what each has by way of an ownership interest in the object. It is therefore an involuntary realignment of their interests in the property and in effect a conveyance from the losing party to the winning party." RESTATEMENT (SECOND) OF JUDGMENTS, *supra* § 43 comment *a* at 2.

■ The property at issue in the Drew litigation was the shaded area. The Drew litigation settled the interests of the Drews and the respondents in this area and settled the petitioner's interests in this area because he was the Drews' successor in interest. The judgment in the Drew litigation, therefore, precludes the petitioner from "seeking different kinds of relief, advancing different theories, relying on different evidence, or asserting further claims to redress as against [the respondents] with regard to" the shaded area. *Id.* § 43 comment *b* at 3.

Contrary to the petitioner's assertions, the preclusive effect of the judgment in the Drew litigation extends not only to his claims to own the portion of Beech Street included in the shaded area, but also to his claim for an easement over this area. Illustration 2 to RESTATEMENT (SECOND) OF JUDGMENTS, *supra* § 43, is on point:

> A, the owner of Blackacre, brings an action against B, the owner of Whiteacre, asserting an easement over Whiteacre by reason of a certain conveyance from B. Judgment is given for B on the ground that the conveyance did not give A an easement. A thereafter conveys Blackacre to S. S is precluded from asserting an easement over Whiteacre by virtue of A's long adverse passage over the course of the claimed easement.

In the Drew litigation, the Drews argued that they owned the shaded area under a theory of adverse possession. The court's judgment against them precluded them and the petitioner from raising any other claim with regard to the shaded area, including an easement claim.

■ While the Drew litigation is preclusive as regards the shaded area, it is *not* preclusive, at least with respect to the petitioner, as regards any other property owned by the respondents, including the portions of Beech Street that are in the non-shaded area. *See* RESTATEMENT (SECOND) OF JUDGMENTS, *supra* § 43 comment *c* at 4-5. A judgment in an action that determines interests in real or personal property "[w]ith respect to *other* property held by a party to the action, does not preclude a person who is a successor in interest thereof from subsequently litigating issues determined in the action." *Id.* § 43(2) (emphasis added).

Illustration 4 to RESTATEMENT (SECOND) OF JUDGMENTS, *supra* § 43 is instructive:

> A is the owner of two mobile homes that B contends were sold to him. A brings an action with respect to one of the homes for a declaration that they were not sold to B. Judgment is for B. A then

> sells his interest in the other mobile home to S. S is not precluded from bringing an action against B to establish S's title to the second home . . . .

In this illustration, A would likely be precluded from bringing an action regarding the second home "because the identity of the basis of his claim concerning the two homes," that they were not sold to B, "implies that . . . A should be regarded as having a single claim that is barred by the judgment." *Id.* § 43 comment *c* at 5. It would be unfair, however, to apply this same rule of preclusion to S, unless S had knowledge of the dispute over title when he acquired the property. *Id.* "Assuming S is not precluded by such equitable considerations, however, there seems no good reason for saying that he may not litigate a claim concerning what is now his property because his predecessor in interest had an opportunity to do so but did not avail himself of it." *Id.*

Thus, while the Drews could have brought claims regarding the non-shaded area, their failure to do so does not preclude the petitioner from doing so in this litigation. Accordingly, the court erred to the extent that it ruled that res judicata barred the petitioner's claims with respect to the part of Beech Street that is not in the shaded area. These claims include the petitioner's claims: (1) to access pursuant to RSA 231:43 as it pertains to any part of Beech Street that is not in the shaded area; (2) to own the non-shaded portion of Beech Street up to the center line, *see Duchesnaye v. Silva*, 118 N.H. 728, 732 (1978); (3) to have an implied easement in the non-shaded portion of Beech Street for access to his garage, *see id.* at 733; and (4) to have a prescriptive easement over the part of Beech Street that is in the non-shaded area. We reverse the trial court's rulings on these claims and remand for further proceedings consistent with this opinion.

Finally, the petitioner contests the trial court's denial of his motion for summary judgment on his claim for a prescriptive easement. He asserts that the prescriptive easement claim was "actually litigated" in the Drew litigation and that the trial court's findings in that litigation are dispositive.

In reviewing the superior court's summary judgment rulings, we consider the evidence in the light most favorable to the non-moving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law. *Grand China v. United Nat'l Ins. Co.*, 156 N.H. 429, 431 (2007). We review a trial court's application of law to facts *de novo. Id.*

■ To establish a prescriptive easement, the petitioner had to show, by a balance of the probabilities, that he or the Drews used the shaded portion of Beech Street for twenty years and that this use was adverse, continuous, and uninterrupted in such a manner as to give notice to the respondents

that an adverse claim was being made to it. *Bonardi v. Kazmirchuk*, 146 N.H. 640, 642 (2001). The petitioner argues that the trial court in the Drew litigation found all of these elements to exist and, therefore, he is entitled to judgment as a matter of law on his prescriptive easement claim. To the contrary, while the trial court in the Drew litigation found that the Drews used the shaded portion of Beech Street continuously for twenty years, it did *not* find that their use was adverse. The trial court specifically denied the Drews' request for a finding that they exercised "adverse use" over the disputed area.

## II

In their cross-appeal, the respondents assert that the trial court erred in failing to find that the beach area to which tax lot 36 is entitled access is a separate triangular piece of land adjacent to Beech Street, rather than land located at the end of Beech Street. We will not disturb the findings of the trial court unless they lack evidentiary support or are erroneous as a matter of law. *New Hampshire Dep't of Envtl. Servs. v. Marino*, 155 N.H. 709, 717 (2007). We review legal conclusions, as well as the application of law to fact, independently for error. *Id.* Our inquiry is to determine whether the evidence presented to the trial court reasonably supports its findings, and then whether the court's decision is consonant with applicable law. *Id.* "The findings of the trial court are within its sound discretion, particularly when a view has been taken." *Id.* (quotation and brackets omitted).

Based upon our review of the record submitted on appeal, we conclude that there is evidence to support the trial court's finding that the "beach area" to which the deed referred was the beach area at the end of Beech Street. This evidence included the trial court's view of the area. While the evidence before the court may have been conflicting, it was for the trial court to resolve conflicts in evidence. *Id.* at 718. As there is evidence to support the trial court's finding, we uphold it.

*Affirmed in part; reversed in part; and remanded.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.