Coos
Nos. 2009-017
2009-018

CHARLES KALIL & a.

v.

TOWN OF DUMMER ZONING BOARD OF ADJUSTMENT

CHARLES KALIL & a.

v.

TOWN OF DUMMER

Argued: September 24, 2009
Opinion Issued: February 11, 2010

726

*Cooper Cargill Chant, P.A.*, of North Conway (*Randall F. Cooper* on the brief and orally), for the plaintiffs.

*Gallagher, Callahan & Gartrell, P.C.*, of Concord (*R. Matthew Cairns* and *Erik G. Moskowitz* on the brief, and *Mr. Cairns* orally), and *Gardner, Fuller & Waugh*, of Lebanon (*H. Bernard Waugh* on the brief), for the defendants.

DALIANIS, J. In these consolidated appeals, the plaintiffs, Charles and Brenda Kalil, contest two orders of the Superior Court (*Vaughan*, J.). In one, the court granted the motion to dismiss filed by defendant Town of Dummer (Town) on the ground that res judicata barred the plaintiffs' writ alleging an inverse condemnation claim. In the other, the court denied the plaintiffs' motion to amend their appeal of the denial of their variance request to add an inverse condemnation claim. We affirm.

This is the second appeal involving the plaintiffs' land in Dummer. *See Kalil v. Town of Dummer Zoning Bd. of Adjustment*, 155 N.H. 307 (2007). The following facts are taken from *Kalil*, or are evidenced in the record.

The plaintiffs own land located in both the Town's conservation and conservation overlay zones. *Kalil*, 155 N.H. at 309. In 2004, they applied for building permits to construct a barn, a bird barn with flying pen, and a farmhouse. *Id.* When this application was denied, they appealed to defendant Town of Dummer Zoning Board of Adjustment (ZBA), and, at the same time, sought a variance from the ZBA to construct a fish and game farm that would include the barn, bird barn and farmhouse. *Id.* After a hearing, the ZBA denied both the building permit appeal and the plaintiffs' request for a variance. *Id.* The plaintiffs appealed to superior court, which ruled that the ZBA's decision was "under developed," and, therefore, remanded the matter to the ZBA for further proceedings. *Id.*

We affirmed the superior court's decision to remand the variance request to the ZBA for it to clarify its decision based upon the pre-existing record. *Id.* at 312-13. We remanded the building permit appeal to the superior court for it to "either address the merits of the issues surrounding the building permits or explain why it is reserving its decision upon those issues." *Id.* at 313.

Upon remand, the trial court ruled that the building permits were properly denied. Upon review of the ZBA's report clarifying its earlier decision to deny the plaintiffs' variance request, the trial court affirmed the ZBA's decision. The plaintiffs moved for reconsideration, arguing that, without a variance, they "will be substantially deprived of the economically viable use of their land." *See Burrows v. City of Keene*, 121 N.H. 590, 598 (1981). The trial court denied the plaintiffs' motion. The plaintiffs did not appeal.

Shortly thereafter, the plaintiffs filed a new writ, seeking damages for alleged inverse condemnation arising from the ZBA's denial of their variance request. The Town raised res judicata as a defense in its summary statement, filed August 8, 2008, but failed to raise it as a defense in its July 23, 2008 brief statement of defenses. In response to the plaintiffs' motion to preclude res judicata as a defense, the Town moved to amend its brief statement of defenses, which the trial court granted. Thereafter, the Town moved to dismiss the plaintiffs' new writ on res judicata grounds.

In October 2008, before the court had ruled upon the Town's motion to dismiss, the plaintiffs moved to amend their original appeal of the ZBA's variance decision to add an inverse condemnation claim. The trial court granted the Town's motion to dismiss and denied the plaintiffs' motion to amend. These consolidated appeals followed.

The plaintiffs first argue that the trial court erred by allowing the Town to raise res judicata as an affirmative defense. Relying upon Superior Court Rule 28, they assert that "as of July 31, 2008, the defendant, through its attorneys, had actual notice of [the] defense of *res judicata* and failed to file in a timely manner [a pleading that raised] that affirmative defense, thereby waiving the same as a matter of law."

Superior Court Rule 28 provides:

> All special pleas and brief statements shall be filed within thirty days following the return date of the writ; otherwise the cause shall be tried upon the general issue. Failure to plead affirmative defenses, including the statute of limitations, within this time will constitute waiver of such defenses. No brief statement or special plea shall be afterwards received except by leave of court as justice may require.

Here, the plaintiffs' writ was returnable on the first Tuesday of July 2008. Within thirty days of this period, the Town filed its brief statement of defenses, but neglected to include res judicata as an affirmative defense. Eight days after the thirty-day period expired, however, the Town raised res judicata as a defense and, thereafter, sought leave to amend its statement of defenses to include this defense.

Although pursuant to the literal terms of Superior Court Rule 28, the Town may have waived its affirmative defense of res judicata, Superior Court Rule 28 grants the trial court authority to allow late filing of such a defense "as justice may require." Additionally, under the Preface to the Superior Court Rules, the trial court may waive the application of any rule "[a]s good cause appears and as justice may require." *See* RSA 514:9 (2007) ("Amendments in matters of substance may be permitted in any action, in

any stage of the proceedings, upon such terms as the court shall deem just and reasonable, when it shall appear to the court that it is necessary for the prevention of injustice."). Accordingly, the question before us is whether the trial court erred when it determined that justice required allowing the Town to amend its brief statement of defenses.

Amendment of pleadings is liberally permitted, and the decision to grant or deny a motion to amend rests in the sound discretion of the trial court. *Dent v. Exeter Hosp.*, 155 N.H. 787, 796-97 (2007); *see Attorney General v. Morgan*, 132 N.H. 406, 408 (1989). We will not overturn that decision unless it is an unsustainable exercise of discretion. *Dent*, 155 N.H. at 797. The party asserting that a trial court's order is unsustainable must demonstrate that the ruling was unreasonable or untenable to the prejudice of its case. *Foley v. Wheelock*, 157 N.H. 329, 332 (2008).

Given our emphasis upon justice over procedural technicalities, *see Whitaker v. L.A. Drew*, 149 N.H. 55, 59 (2003), we are unable to conclude that the trial court unsustainably exercised its discretion by allowing the Town to amend its brief statement. The record reveals that on August 8, 2008, only eight days after the thirty-day period expired, the Town alerted the plaintiffs to its intent to raise res judicata as an affirmative defense. The plaintiffs have failed to demonstrate any prejudice resulting from this brief delay. Under these circumstances, the trial court reasonably could have determined that justice required allowing the Town to amend its brief statement.

The plaintiffs next assert that the trial court erroneously denied their motion to amend their original appeal of the ZBA's denial of their variance request to add an inverse condemnation claim. We find no error in the trial court's decision.

The plaintiffs sought to amend their original appeal of the ZBA's denial of their variance long after the trial court's decision in the appeal had become a final judgment on the merits. The trial court issued its final order in the ZBA appeal on April 15, 2008. This order became a final judgment thirty-one days later. *See* SUPER. CT. R. 74. The plaintiffs, however, did not move to amend their appeal until nearly six months after the judgment became final. By that time, "the trial court's power to allow amendment . . . [had] ceased." *Arsenault v. Scanlon*, 139 N.H. 592, 594 (1995). Accordingly, its denial of the plaintiffs' motion to amend their original appeal was not an unsustainable exercise of discretion.

The plaintiffs next contend that the trial court erred when it dismissed their new writ on res judicata grounds. "The applicability of res judicata is a question of law that we review *de novo.*" *Sleeper v. Hoban*

*Family P'ship*, 157 N.H. 530, 533 (2008). "Res judicata precludes the litigation in a later case of matters actually decided, and matters that could have been litigated, in an earlier action between the same parties for the same cause of action." *Id.* The doctrine applies when three elements are met: "(1) the parties must be the same or in privity with one another; (2) the same cause of action must be before the court in both instances; and (3) a final judgment on the merits must have been rendered in the first action." *Id.* The plaintiffs argue that res judicata does not apply because their appeal from the denial of a variance request is not the same cause of action as their inverse condemnation claim.

The plaintiffs acknowledge that in *Shepherd v. Town of Westmoreland*, 130 N.H. 542, 544 (1988), we squarely addressed this issue. There, the plaintiff appealed a zoning board's denial of a variance, and the superior court upheld the board's decision. *Shepherd*, 130 N.H. at 543. The plaintiff did not appeal the ruling of the superior court, but instead filed a petition for declaratory judgment, "alleging that the zoning ordinance [was] unconstitutional as applied to her and that the denial of a variance amounted to an inverse condemnation of her land." *Id.* The defendant argued that because the plaintiff had the opportunity, but failed to litigate her inverse condemnation claim on appeal of the zoning board's denial of her variance request, she was precluded from raising this claim in the present petition. *Id.* at 544. We agreed. *Id.* at 544-45.

In addressing whether res judicata barred the plaintiff's inverse condemnation claim, we relied upon *Eastern Marine Construction Corp. v. First Southern Leasing*, 129 N.H. 270, 274, 275 (1987), in which we embraced the modern trend "to define cause of action collectively to refer to all theories on which relief could be claimed on the basis of the factual transaction in question," and "reject[ed] the view that the term is synonymous with the particular legal theory in which a party's claim for relief is framed." *See Sleeper*, 157 N.H. at 534; RESTATEMENT (SECOND) OF JUDGMENTS § 24 comment *a* at 197 (1982). Based upon this definition of "cause of action," we concluded that the plaintiff's appeal of the denial of her variance request and her subsequent inverse condemnation claim were the same cause of action for res judicata purposes. *Shepherd*, 130 N.H. at 544-45. We explained:

> [T]he constitutional and inverse condemnation claims raised by the plaintiff arise out of the same factual transaction as did her previous [appellate] claim for a variance. Indeed, the only fact to be added here is that, having been denied a variance, the plaintiff now contends that that denial constitutes a taking of her property. We have consistently barred such claims when, as here, the subsequent action is so closely related to the earlier action. The

fact that the plaintiff attaches a new label to her cause of action is insufficient to remove the bar of the earlier adjudication against her.

*Id.* at 544 (citations omitted). Accordingly, we held that to have avoided res judicata as a bar, the plaintiff "should have raised her . . . inverse condemnation claim[] in her 1984 appeal to the superior court." *Id.* at 545.

██ As the plaintiffs concede, *Shepherd* is dispositive. Like the claims at issue in *Shepherd*, the plaintiffs' inverse condemnation claim arises out of the same factual transaction as their prior appeal from the denial of the variance. *See id.* at 544. As in *Shepherd*, the only additional fact is that the plaintiffs now contend that the denial results in an unconstitutional taking of their property. *See id.* Because the plaintiffs' zoning appeal and inverse condemnation claim arise from the same factual transaction, they constitute the same cause of action for res judicata purposes. *See id.* The trial court, therefore, did not err when it granted the Town's motion to dismiss on this ground.

██ The plaintiffs urge us to "revisit" our holding in *Shepherd*, which necessarily would involve revisiting our holding in *Eastern Marine*. "We do not lightly overrule a prior opinion." *State v. Duran*, 158 N.H. 146, 153 (2008). "The doctrine of stare decisis demands respect in a society governed by the rule of law, for when governing legal standards are open to revision in every case, deciding cases becomes a mere exercise of judicial will with arbitrary and unpredictable results." *Jacobs v. Director, N.H. Div. of Motor Vehicles*, 149 N.H. 502, 504 (2003) (quotations omitted). Thus, when asked to reconsider a previous holding, we do not decide the issue *de novo*; rather, we review "whether the ruling has come to be seen so clearly as error that its enforcement was for that very reason doomed." *Id.* at 504-05 (quotation omitted). "While the stability of the law does not require the continuance of recognized error, it does call for settlement of principle and consistency of ruling when due consideration has been given and error is not clearly apparent." *Glines v. Railroad*, 94 N.H. 299, 303 (1947) (quotation omitted).

██ Several factors inform our judgment, including: (1) whether the rule has proven to be intolerable simply in defying practical workability; (2) whether the rule is subject to a kind of reliance that would lend a special hardship to the consequences of overruling; (3) whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; and (4) whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification. *Jacobs*, 149 N.H. at 504; *see Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 854-55 (1992).

■ None of these factors convinces us that overruling *Shepherd* expressly and *Eastern Marine* impliedly is warranted. Our rule is not "abandoned doctrine," but is the rule in the vast majority of jurisdictions as well as the federal courts. Heiser, *California's Unpredictable Res Judicata (Claim Preclusion) Doctrine*, 35 SAN DIEGO L. REV. 559, 569 n.27 (1998); *see Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 78 (D.C. Cir. 1997); *Friedman Prof'l Management v. Norcal Mut.*, 15 Cal. Rptr. 3d 359, 366 (Ct. App. 2004). At most, only nine jurisdictions do not define a cause of action for res judicata purposes the way we do, as coterminous with the underlying factual transaction. Heiser, *supra* at 569 n.27.

Further, our rule is practical and workable. "The substantive efficiency" of defining a cause of action according to the transactional theory "is obvious." *Id.* at 606. Under such an approach, "a unitary transaction or occurrence . . . give[s] rise to only one cause of action which must be pursued in one lawsuit." *Id.* The transactional approach is also easy to understand and predictable in its application. *Id.* The approach, as set forth in the RESTATEMENT (SECOND) OF JUDGMENTS, is precise and well-explained, providing clear guidance to litigants and judges. *See id.* at 608.

The plaintiffs "make[] no argument specifically directed at any of the factors listed above." *Hilario v. Reardon*, 158 N.H. 56, 63 (2008). Instead, they merely contend that "strict application" of the rule in *Shepherd* is "unfair," and requires that we revisit *Shepherd* "to avoid unfairly barring claims." *See id.* It is unfair, they argue, to require a landowner to bring an inverse condemnation claim at the same time as an appeal from a denial of a variance request because: (1) the landowner is seeking to vindicate different rights in these claims; (2) the superior court acts as an appellate body when reviewing a zoning board's denial of a variance while it acts as the original fact finder when reviewing an inverse condemnation claim; and (3) the landowner must decide within thirty days after a zoning board has issued its final decision not only whether to appeal the decision, but also whether to pursue an inverse condemnation claim based upon that decision. *See Hill-Grant Living Trust v. Kearsarge Lighting Precinct*, 159 N.H. 529, 533 (2009) (holding that a state taking claim is ripe as soon as zoning board has issued its final decision).

■ We do not, generally, revisit cases merely because of perceived unfairness. In *Hilario*, we took this extraordinary step only because of the unusual facts in that case. In *Hilario*, the issue was whether a general rule we had adopted in *Mahoney v. Shaheen, Cappiello, Stein & Gordon, P.A.*, 143 N.H. 491 (1999), applied to the very specific facts in *Hilario*. The general rule from *Mahoney*, 143 N.H. at 496, is that a criminal defendant must allege and prove actual innocence to prevail on a malpractice claim

against a former criminal defense attorney. The question in *Hilario* was whether, and to what extent, this general rule applied when the alleged legal malpractice occurred after the plea and sentencing, the malpractice claim was unrelated to any strategic or tactical decision relating to the convictions, and the criminal defendant did not argue that, but for his attorney's negligence, he would have obtained a different result in the criminal case. *Hilario*, 158 N.H. at 66-67. We concluded that *Mahoney* was distinguishable from *Hilario*, and, thus, the rule from *Mahoney* did not apply. *Id.* at 63-67.

By contrast, the issue here is whether this case is governed by a case that is *directly* on point. Under these circumstances, the alleged "unfairness" of applying *Shepherd*, a case that is on all fours with the instant case, does not justify revisiting *Shepherd*.

Even if unfairness, generally, would allow us to revisit *Shepherd*, we disagree that any of the above is "unfair." As the plaintiffs acknowledge, a trial court faced with both an appeal from the denial of a variance request and an inverse condemnation claim arising from the same factual transaction may bifurcate the proceedings, and decide the non-constitutional claim first. Further, a party often uses different claims to vindicate different rights and obtain different remedies. These differences do not render it "unfair" to treat the claims as the same for res judicata purposes when they arise from the same factual transaction. Under the transactional definition, which we adopted in *Eastern Marine* and applied in *Shepherd*, two claims are the same for res judicata purposes "regardless of the number of substantive theories, or variant forms of relief flowing from those theories . . . ; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights." RESTATEMENT (SECOND) OF JUDGMENTS, *supra* § 24 comment *a* at 197, § 25; *see Sleeper*, 157 N.H. at 534. "The transaction is the basis of the litigative unit or entity which may not be split." RESTATEMENT (SECOND) OF JUDGMENTS, *supra* § 24 comment *a* at 197.

Finally, we see nothing "unfair" in requiring a landowner to decide, within thirty days of a zoning board's final decision, both whether to appeal the decision to the superior court and whether to bring an inverse condemnation claim arising from that decision. Because the issue is not before us in this appeal, we express no opinion as to whether, as the plaintiffs contend, a landowner is required to exhaust administrative remedies by bringing an inverse condemnation claim first to the zoning board before bringing it to the superior court. *See Blue Jay Realty Trust v. City of Franklin*, 132 N.H. 502, 509 (1989).

We have reviewed the remainder of the plaintiffs' arguments concerning *Shepherd* and conclude that they lack merit and warrant no extended discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993). As the plaintiffs have failed to persuade us that *Shepherd* "has come to be seen so clearly as error that its enforcement was for that very reason doomed," we decline their invitation to overrule it. *Jacobs*, 149 N.H. at 504-05 (quotation omitted).

*Affirmed.*

BRODERICK, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.