NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2014-189


ROBERT GUNDERSON

v.

COMMISSIONER, NEW HAMPSHIRE DEPARTMENT OF SAFETY

Argued: October 15, 2014
Opinion Issued: December 19, 2014


Seufert, Davis & Hunt, PLLC, of Franklin (Brad C. Davis on the brief and orally), for the petitioner.


Joseph A. Foster, attorney general (John J. Conforti, assistant attorney general, on the memorandum of law and orally), for the State.


LYNN, J. The petitioner, Robert Gunderson, appeals an order of the Superior Court (McNamara, J.) finding that he is a "Retail Vehicle Dealer" as defined by RSA 259:89-a (2014), and that he must obtain a license in accordance with RSA 261:103-a (2014) to engage in his motor vehicle business. We affirm.

The following facts are undisputed. The petitioner is a New Hampshire resident who works as a self-described "export buyer's agent." As such, he purchases specific motor vehicles from retail dealers across the country and

exports them to buyers in foreign countries.  Prior to exporting the vehicles, the petitioner obtains title to the vehicles in New Hampshire and holds himself out as the owner.  The petitioner is then paid to transfer ownership of the vehicles to the foreign purchasers.  The petitioner neither owns a retail motor vehicle sales location nor operates a lot to display vehicles, but performs his services as an export buyer's agent from his Moultonborough residence.  The vehicles are never listed online or in any publications or classified advertising.

In 2012, the petitioner purchased a 2012 Porsche Cayenne and a 2012 BMW X5 from out-of-state retail dealers for the purpose of selling them in China and Russia.  When the petitioner applied for titles for the vehicles, however, the New Hampshire Bureau of Title and Anti-Theft denied the applications and the New Hampshire Department of Safety determined that he needed to obtain a state-issued motor vehicle dealer's license to export motor vehicles.

The petitioner then filed the instant declaratory judgment action in superior court, seeking a ruling that he is not required to obtain a motor vehicle dealer's license.[1]  Based upon an agreed statement of facts submitted by the parties, the trial court ruled that the petitioner is "engaged in the motor vehicle business" and, therefore, is required to obtain a dealer's license in accordance with RSA 261:103-a.  The court subsequently denied the petitioner's motion for reconsideration, and this appeal followed.

The petitioner asserts that:  (1) he is not a retail vehicle dealer as defined in RSA 259:89-a because he purchased and exported the vehicles in exchange for a commission and never offered them for sale to the general public; (2) he does not offer vehicles for sale to the general public; and (3) if New Hampshire law requires a dealer's license for the purpose of exporting motor vehicles out of the country, it is preempted by federal law and violates both the Commerce Clause and the Equal Protection Clause of the United States Constitution.  The State responds that the petitioner's regular course of conduct of selling vehicles to foreign buyers qualifies him as a retail vehicle dealer pursuant to RSA 259:89-a.  The State further argues that the petitioner's federal constitutional claims have not been properly preserved for review.  We agree with the State on both points.

---

[1] Prior to initiating this lawsuit, the petitioner filed a petition with the New Hampshire Department of Safety seeking a ruling that he was not required to obtain a dealer's license.  Following a hearing, a department hearings officer determined that the petitioner was conducting business as an automobile dealer and, therefore, was required to obtain a motor vehicle dealer's license.  The petitioner did not seek reconsideration of this decision, nor did he seek review of the decision in this court.  Nonetheless, because the State does not contend that the unappealed administrative decision precluded the petitioner from obtaining relief from the superior court, we have no occasion to address this issue.  See Kalil v. Town of Dummer Zoning Bd. of Adjustment, 159 N.H. 725, 728 (2010) (stating that res judicata is an affirmative defense that the trial court may deem to be waived if not asserted).

We first address the preservation issues. In the trial court, the petitioner first raised the federal preemption issue in a motion to reconsider filed after the court issued its original order. Without any developed argument, the motion merely asserted that federal law preempts the state's licensing requirements and that requiring a license would violate the Commerce and Equal Protection Clauses of the Federal Constitution. The trial court found that "[t]his argument was never pled, and was never made in the briefing on the merits, and is improper now," although the court then rejected the argument on its merits as well.

In his notice of appeal, the petitioner raised preemption as an issue, but did not raise the asserted Commerce Clause or Equal Protection violations. Because the Commerce Clause and Equal Protection issues were not raised in the notice of appeal, we deem them waived and will not address them further. Lassonde v. Stanton, 157 N.H. 582, 587 (2008) ("Appellate questions not presented in a notice of appeal are generally considered waived by this court."). With respect to the preemption issue, the petitioner's brief on appeal is virtually identical to his trial court motion for reconsideration – other than noting that 19 C.F.R. § 192.2 does not require a federal license to export a used motor vehicle, it contains no developed argument or citation of authority explaining how or why applying this state's dealer licensing laws to his activities is preempted by federal law. This cursory assertion is insufficient to warrant appellate review, and we therefore also decline to address the preemption issue. See Douglas v. Douglas, 143 N.H. 419, 429 (1999) ("We hold that in the realm of appellate review, a mere laundry list of complaints regarding adverse rulings by the trial court, without developed legal argument, is insufficient to warrant judicial review." (citation omitted)). Therefore, we will address only the statutory interpretation issue.

The construction of RSA 259:89-a presents an issue of law, which we review de novo. See State v. Addison, 160 N.H. 732, 754 (2010). We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. Id. When interpreting statutes, we look to the plain language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret legislative intent from the statute as written and will neither consider what the legislature might have said nor add language it did not see fit to include. Id. Additionally, we interpret a statute in the context of the overall statutory scheme and not in isolation. Id.

RSA 259:89-a states as follows:

"Retail vehicle dealer" shall mean a person engaged in the motor vehicle business who sells motor vehicles to the general public, or demonstrates for sale vehicles on consignment to the general public. Any person who sells or who acts as an agent of a seller for

3

5 or more vehicles at retail to the general public in a consecutive 12-month period is a retail vehicle dealer.

Thus, to meet the statutory definition of a retail vehicle dealer, a person must: (1) be engaged in the motor vehicle business; (2) sell vehicles or demonstrate for sale vehicles on consignment; and (3) make the sales or demonstrations to the general public.[2]

RSA 259:60-a (2014) defines a motor vehicle business as follows:

"Motor vehicle business" shall mean a business which is principally engaged in one or more of the following activities: buying, selling, or exchanging motor vehicles requiring registration for use upon a way, motor vehicle mechanical service, motor vehicle collision repair service, the reconditioning and restoration of motor vehicles, and the sale of motor vehicle parts. For the purposes of this definition, "principally engaged" means that the business derives at least 51 percent of its annual gross income from the motor vehicle business or, if there was no income in the prior year, 51 percent of the assets of the business are directly related to the motor vehicle business.

Here, the petitioner concedes that he "generates income for himself by purchasing new automobiles from dealerships around the United States and exporting the vehicles to buyers in foreign countries," and that he "can be seen as being engaged in the motor vehicle business." Additionally, he does not claim that his income derived from motor vehicle sales fails to meet the statute's "principally engaged" test. As a result, we conclude that the petitioner is engaged in the motor vehicle business.

The next requirement of the retail vehicle dealer definition is the sale of vehicles or demonstration for sale of vehicles on consignment. RSA 259:89-a does not provide a definition of the term "sale." Accordingly, we look to its plain and ordinary meaning. Addison, 160 N.H. at 754. A "sale" is "[t]he transfer of property or title for a price." Black's Law Dictionary 1454 (9th ed. 2009). This interpretation is consistent with how the legislature has defined the term elsewhere. For example, under the Uniform Commercial Code, as adopted in New Hampshire, a "'sale' consists in the passing of title from the seller to the buyer for a price." RSA 382-A:2-106 (2011); cf. RSA 259:95 (2014) (including "any transfer of ownership" within the definition of "sale" for road toll fuel assessment purposes). This is precisely what occurs here. Prior to

_____

[2] The second sentence of the statute appears to address the matter of how frequently or regularly a person must engage in sales of motor vehicles (i.e., at least 5 sales in a 12-month period) in order to be regarded as a dealer. The petitioner does not claim to sell fewer than 5 vehicles in a 12-month period.

4

exporting a vehicle overseas, the petitioner obtains title to the vehicle and holds himself out as the owner. He is then paid in exchange for the transfer of the vehicle's title. The petitioner argues that he receives only a commission to export vehicles, and does not receive money for their sale; thus, he contends he is not engaged in the sale of the vehicles directly. Regardless of the term the petitioner uses to describe the payment he receives, however, there is no dispute that he had actual legal ownership of the vehicles he purchased and that he then transferred that ownership in exchange for money. Therefore, we conclude that the petitioner sells the vehicles.

Finally, the petitioner argues that even if he is engaged in the motor vehicle business, he does not sell vehicles to the general public and, thus, cannot be considered a motor vehicle dealer under RSA 259:89-a. Because RSA 259:89-a does not provide a definition of the term "general public," we interpret the term according to its plain and ordinary meaning. See Addison, 160 N.H. at 754. The petitioner cites the Black's Law Dictionary definition of "public" in support of his argument that the phrase "the general public" consists of a smaller, more specific subset of the public at large. The applicable Black's Law Dictionary definition for "public" includes "[t]he people of a nation or community as a whole." Black's Law Dictionary 1348 (9th ed. 2009). The petitioner contends that the vehicles were exported to specific buyers obtained as clients before he purchased the vehicles and that, as a result, the vehicles were not offered for sale to the whole community. No evidence suggests, however, that the petitioner makes his services available to only a select few; nor does the petitioner argue that he sells vehicles to only a certain group of people. Even if the petitioner exports vehicles to buyers he obtains before purchasing the vehicles, there is no evidence to suggest that he limits the universe of persons who may become buyers. Additionally, the plain meaning of "general public" does not require that every member of the larger community have access to the petitioner's services, that the vehicles must be targeted toward every member of the community, or that the community must be within the United States.

For the reasons stated above, we hold that the trial court did not err in determining that the petitioner is a "Retail Vehicle Dealer" as defined by RSA 259:89-a.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.

5